1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   MIKE RHABARIAN; PAIMAN                    No.  2:10-cv-00767-TLN-KJN
     RAHBARIAN, on behalf of herself and as
12   representative for the Estate of Fakhri
     Attar; and VERA DAVYDENKO, on
13   behalf of herself and as guardian ad litem      **TENTATIVE RULING**
     for N.R., a minor, and M.R., a minor,
14
                  Plaintiffs,
15
           v.
16
     DANIEL CAWLEY, and BRUCE
17   SMALLWOOD,
18                Defendants.
19

20

21         This matter is before the Court on Defendants' Motion for Summary Judgment or Partial

22   Summary Judgment.  (Defs.' Mot. Summ. J., ECF No. 24; Defs.' Mem. P. & A. Supp. Mot.

23   Summ. J. ("Mot. Summ. J."), ECF No. 25.)  Plaintiffs oppose the motion.  (Mem. P. & A. of Pls.

24   in Opp'n to Summ. J. ("Opp'n"), ECF No. 35.)  The Court, finding oral argument unnecessary,

25   submitted the matter on the briefs by prior order (ECF No. 51).

26         While the matter was under submission, Plaintiffs filed a motion to, *inter alia*, reopen

27   discovery and impose monetary sanctions on Attorney for Defendants, David W. Hamilton, for

28   "wrongful and outrageous conduct in threatening Plaintiffs' counsel with hundreds of thousands

                                            1

1    of dollars in monetary sanctions." (Pls.' Not. of Mot. & Mot, 3:4–7, ECF No. 69.) Review of the

2    moving papers in support of Plaintiffs' motion reveals Defendants produced "five banker's boxes

3    full of paper records" in May 2013, while Defendants' motion for summary judgment was

4    pending. (Decl. Cyrus Zal in Supp. Pls.' Mot., Ex. 5, Letter from David W. Hamilton, May 1,

5    2013, at 2–3, ECF 61-1.) Plaintiffs contend these documents, and others, support their opposition

6    to Defendants' pending motion for summary judgment.

7        For the reasons set forth below, the Court finds that Plaintiffs have not shown cause to

8    reopen discovery nor that the evidence they allege Defendants previously withheld will change

9    the outcome of the decision on Defendants' pending motion for summary judgment. Specifically,

10   neither Plaintiffs' opposition nor motion for sanctions provides evidence or argument on the

11   pertinent issue: Defendants' intent (or recklessness) to mislead the magistrate in their application

12   for search warrant.[1] Therefore, the Court issues this tentative ruling. If Plaintiffs or Defendants

13   believe these documents contain evidence on the pertinent issues, they may file and serve

14   objections to this tentative ruling in the manner detailed below. In the event a party elects to file

15   and serve objections, the Court may set a hearing date as needed.

16                                    **BACKGROUND**[2]

17       Plaintiffs were involved—as owners, operators, employees, or spouses—in various car

18   businesses in Sacramento essentially owned and operated as one family business, and Plaintiffs

19   are all related by blood or marriage. Specifically, Plaintiff Mike Rahbarian owned and operated

20   Cars 4 Less, Inc. and was married to Fakhri Attar. (Mike Rahbarian Decl. ¶¶ 3, 6, ECF No. 40.)

21   His son Shayan Rahbarian (who is not a named party in this matter) owned and operated Luxury

22   Imports of Sacramento, Inc. ("Luxury Imports") and was the president of Suzuki of Sacramento.

23   (*Id.* ¶ 6; Dan Cawley Decl. ¶¶ 18–19, ECF No. 27.) Plaintiff Paiman Rahbarian invested money

24   into the Luxury Imports' business and helped manage Suzuki of Sacramento. (Paiman Rahbarian

25   Decl. ¶ 8, ECF No. 38; Cawley Decl. ¶¶ 18–19.) Plaintiff Vera Davydenko, who was married to

26   Paiman Rahbarian at the time of the original investigation, formerly worked at Luxury Imports,

27

28
            [1] *See* discussion *infra* at the "ANALYIS" section, subpart A.
            [2] The following factual background was drawn from declarations submitted by Plaintiffs and Defendants,
     and from Plaintiffs' and Defendants' respective Statements of Undisputed Facts.

1    assisting with office operations.  (Vera Davydenko Decl. ¶ 3, ECF No. 37.)  Further, Paiman

2    Rahbarian and Vera Davydenko's minor children, N.R. and M.R, are also Plaintiffs.  (First

3    Amended Compl. ("FAC") ¶¶ 4–6, ECF No. 6.)[3]  Suzuki of Sacramento was an automobile sales

4    dealership with several retail locations in Sacramento operated by the Rahbarian family under

5    Luxury Imports' dealer license, that filed for bankruptcy and ceased operations in mid-2007.

6    (Cawley Decl. ¶¶ 17, 25–27.)

7         Defendants Dan Cawley and Bruce Smallwood were DMV investigators who investigated

8    Plaintiffs for their roles in a suspected embezzlement scheme.  (Cawley Decl. ¶ 1; Bruce

9    Smallwood Decl. ¶ 1, ECF No. 28.)  Both have training and experience in peace-officer functions

10   and duties, interviewing witnesses, conducting investigations, and DMV operations.  (Cawley

11   Decl. ¶¶ 4–6; Smallwood Decl. ¶¶ 4–6.)

12        Plaintiffs' claims arise from Defendants' criminal investigation culminating in a search

13   warrant and the filing of criminal charges against Paiman and Shayan Rahbarian.  (Decl. David

14   W. Hamilton ¶¶ 3–4, Ex. J, ECF No. 29.)  The criminal charges were eventually dropped, (*id.*),

15   and Plaintiffs subsequently sued Defendants under 42 U.S.C. § 1983, asserting Defendants, in

16   obtaining the warrant and searching Plaintiffs' homes, acted under color of state law to deprive

17   Plaintiffs of their constitutional rights.  (FAC ¶¶ 1, 25.)  Because Plaintiffs' claims arise from

18   Defendants' criminal investigation, search warrant application, execution of the warrant, and the

19   later return of Plaintiffs' property, these events are discussed in greater detail below.

20   **A. DMV's Criminal Investigation**

21        The DMV's underlying criminal investigation was prompted by a complaint from

22   Brasher's Sacramento Auto Auction ("Brasher's"), the suspected victim of the purported

23   embezzlement scheme, in November 2007.  (Cawley Decl. ¶ 7.)  Brasher's sells vehicles on

24   consignment to licensed dealers and offers related services such as inventory financing for new

25   and used car dealers.  (*Id.* ¶ 7.)  Brasher's complained to DMV investigators that Plaintiffs were

26   not honoring their  flooring contract with Suzuki of Sacramento.  (*Id.* ¶ 8, Ex. A.)  Under this

27

28        [3] Fakhri Attar died after the beginning of this action, and is now represented by the executor of her estate,
     Plaintiff Paiman Rahbarian.  (Stipulation & Order Appointing Paiman Rahbarian Representative of the Estate of
     Fakhri Attar, Deceased 3:2–4, ECF No. 22.)

agreement, Brasher's agreed to finance Suzuki of Sacramento's purchases of new vehicles for retail sale from the manufacturer, American Suzuki Motor Corp.  (*Id.* ¶ 8, Ex. A; Shayan Rahbarian Decl. ¶ 3, ECF No. 39.)  The contract provided that Suzuki of Sacramento would hold the sales proceeds in trust for Brasher's and then pay Brasher's within two days of each vehicle's retail sale, plus interest.  (Cawley Decl. ¶ 8, Ex. A; Shayan Rahbarian Decl. ¶ 3.)

Brasher's informed DMV investigators that it was the victim of an embezzlement scheme, perpetrated by Plaintiffs, arising from this agreement.  Specifically, Brasher's told investigators that Suzuki of Sacramento had sold a large number of its floored vehicles.  (Cawley Decl. ¶ 8.)[4] Brasher's provided documentation showing that Brasher's had floored 192 new cars for Suzuki of Sacramento with a collective value exceeding $4 million.  (*Id.* ¶¶ 8, 10.)[5]  Brasher's stated that while it had delivered the vehicles to Suzuki of Sacramento, it had not received payment for any of them[6] and that it had only recovered 19 of the new vehicles.  (*Id.*)  Brasher's provided the DMV with copies of checks written to American Suzuki and copies of invoices for vehicle purchases.  (*Id.* ¶ 12.)  Suzuki of Sacramento declared bankruptcy and closed in mid-2007.  (*Id.* ¶ 17.)  In essence, Brasher's alleged it lent Suzuki of Sacramento more than $4 million worth of new cars, and Plaintiffs sold the cars, pocketed the cash, and then declared bankruptcy.

---

[4] Plaintiffs object to this statement as being inadmissible hearsay.  (Response to Defendants' Separate Statement of Undisputed Material Facts ("Pls.' Resp. UMF") 4, ECF No. 43.)  But this statement is not hearsay "because it was not offered for its truth," but rather "to show the effect on the listener," Defendants, to "explain" the context of Defendants' investigation to defeat Plaintiffs' claim they purposefully mislead the magistrate to obtain a search warrant, discussed *infra*.  *United States v. Connelly*, 395 F. App'x 407, 408 (9th Cir. 2010) (citations omitted).  Therefore, Plaintiffs' hearsay objection is OVERRULED.
   Plaintiffs purport to dispute this fact, arguing: "Brasher's may have told DMV that SOS had sold a large number of its floored vehicles out of trust; however, SOS had tendered and delivered checks to Brasher's that Brasher's held and did not cash with respect to a large number of vehicles financed by Brasher's."  (Pls.' Resp. UMF 4 (citing Barry Larsen Dep. 25:21–25, 29:1–25, 30:1–4).)  Since Plaintiffs do not dispute this fact, but rather argue it should be considered together with the checks, this fact is not disputed; the Court discusses the checks later in the order, *infra*.

[5] Plaintiffs object to this statement as being inadmissible hearsay.  (Pls.' Resp. UMF 4.)  For the reasons stated *supra* note 4, Plaintiffs' hearsay objection is OVERRULED.
   Plaintiffs claim this fact is disputed, arguing: "Brasher's representative may have falsely told DMV that it had not received payment for any of the 192 cars; however, this statement is false on its face as Brasher's had repossessed 19 of those vehicles on June 15, 2007 and SOS had tendered and delivered checks to Brasher's for payment of a great number of those vehicles, checks which Brasher's held and never cashed although Brasher's did cash some of the checks."  (*Id.* (citing Davydenko Decl. ¶ 7; Larsen Dep. 25:21–25, 29:1–25, 30:1–4; Shayan Rahbarian Decl. ¶¶ 5, 6).)  Since Plaintiffs do not dispute that the statement was made, and instead argue the statement was false, the fact is deemed admitted for the limited purpose that the statement was made.  The Court expresses no opinion regarding the veracity of the statement.

[6] Plaintiffs also argue this fact is disputed.  (Pls.' Resp. UMF 4.)  For the reasons stated *supra* note 5, the fact is deemed admitted for the limited purpose that the statement was made.

The DMV opened a criminal investigation into Brasher's allegations and assigned the case to Defendants Cawley and Smallwood as lead investigators.  (*Id.* ¶ 13.)  Defendants and other investigators began compiling individual files of documents for each of the 192 new vehicles floored by Brasher's.  (*Id.* ¶¶ 14–15.)  The DMV's vehicle-registration databases showed that approximately 173 of the new cars floored by Brasher's had been sold or otherwise transferred by Suzuki of Sacramento, and registered to new owners.  (Defs.' Statement of Undisputed Material Facts ("Defs.' UMF") 4, ECF No. 26 (citing Cawley Decl. ¶¶ 14–17).)

DMV investigators uncovered, what they believed to be, an intricate web of business entities operated together by members of the Rahbarian family.  Specifically, DMV investigators determined that prior to Suzuki of Sacramento's bankruptcy and closure in mid-2007, Suzuki of Sacramento operated under a dealer license held by Luxury Imports.  (Cawley Decl. ¶¶ 17–18.)  It also discovered that Shayan Rahbarian was the president of Suzuki of Sacramento and had opened the business in 2005.  (*Id.* ¶ 18; Shayan Rahbarian Decl. ¶ 3.)  The DMV found that Paiman Rahbarian, Kamyar Soltani, and Vera Davydenko were involved in the operations of Suzuki of Sacramento and other auto businesses operating under the Luxury Imports license.  (Cawley Decl. ¶¶ 18–19.)  DMV agents specifically identified Mike Rahbarian as the owner of Cars 4 Less, doing business as Payless Car Rentals.  (*Id.* ¶ 19; Mike Rahbarian Decl. ¶ 6.)  Defendants also obtained flooring documents from 1st Source Bank ("Truckers Bank") showing Paiman Rahbarian's signature on behalf of Cars 4 Less.  (Cawley Decl. ¶¶ 21–22, Ex. C.)  Trucker's Bank told investigators that it was in the process of locating and repossessing vehicles from Payless because of its failure to make monthly payments on the vehicles.  (*Id.*)

The DMV uncovered records that supported Brasher's embezzlement allegations.  These records showed Payless as the retail purchaser of a number of new vehicles that had been floored by Brasher's and shipped to Suzuki of Sacramento, but for which Brasher's had not been paid.  (*Id.* ¶ 21.)  Investigators also obtained Suzuki of Sacramento's business and financial records from the bankruptcy trustee, revealing that Vera Davydenko received a check for $80,000 from the Suzuki of Sacramento bank account shortly before Suzuki of Sacramento's bankruptcy.  (Davydenko Dep. 64–67, Ex. 2.)

Defendants also interviewed some of the Plaintiffs and other individuals related to the business operations of Luxury Imports and Suzuki of Sacramento. (Cawley Decl. ¶ 19.) When interviewed, Suzuki of Sacramento employees told DMV investigators that they engaged in subterfuges under the direction of Paiman Rahbarian and Kamyar Soltani to conceal from Brasher's that cars had already been sold and were no longer in the Suzuki of Sacramento inventory. (*Id.* ¶ 29.)[7]

Defendants' investigation also relied heavily on information provided by Brasher's. Brasher's notified Defendants that it held several meetings with Paiman Rahbarian, Shayan Rahbarian, and Kamyar Soltani about Suzuki of Sacramento's delinquent flooring account. (*Id.* ¶ 24.) Brasher's also told DMV investigators that it conducted periodic lot inspections to verify that the vehicles it had floored remained in the unsold inventory of Suzuki of Sacramento. (*Id.* ¶ 29.)

Defendants' investigation, however, was far from exemplary. First, the complainant and key witness, Brasher's, was embroiled in a civil lawsuit against Luxury Imports—a fact of which Defendants became aware during the investigation. (Cawley Dep. 103:15–25.) At one point, Defendant Smallwood quite irregularly told Brasher's representatives "that DMV intended to file criminal charges against Shayan and Payman Rahbarian, and that the criminal charges would hopefully result in their offering to repay Brasher's . . . as part of a plea deal or to mitigate charges against them." (Decl. Klaus Kolb ¶ 11, ECF No. 41.)[8]

Defendants also failed to interview key witnesses, and the interviews Defendants did conduct left many stones unturned—specifically whether Suzuki of Sacramento in fact paid Brasher's. Defendant Cawley did not ask anyone at Brasher's whether Suzuki tendered checks to Brasher's for payments of the vehicles related to the investigation. (Cawley Dep. 68:22–25.) During their interview with Paiman Rahbarian, neither Defendant Cawley nor Defendant

---

[7] Plaintiffs object to this entire statement as being inadmissible hearsay. (Pls.' Response UMF 8.) For the reasons stated *supra* note 4, Plaintiffs' hearsay objection is OVERRULED.

[8] Defendants object arguing this testimony is inadmissible hearsay. (Defs.' Objections to Pls.' Evidence ("Defs.' Objections") 9:25, ECF No. 47.) Because this statement was made by a party, Defendant Cawley, and is offered by Plaintiffs, it is admissible as a statement by a party opponent. Therefore, Defendants' hearsay objection is OVERRULED.

Smallwood asked about documents regarding Luxury Import's business matters or any payments or checks made to Brasher's.  (Paiman Rahbarian Decl. ¶ 8.)  Shayan Rahbarian specifically told investigators that there was a security-taping system at Luxury Imports dealership locations and gave DMV investigators a videotape recording of meetings between Brasher's and Luxury Imports employees.  (Cawley Decl. ¶ 26.)  But Defendants did not go so far as to ask Shayan Rahbarian if Luxury Imports paid Brasher's for the new Suzuki vehicles by check.  (Shayan Rahbarian Decl. ¶ 7.)[9]  Moreover, Plaintiffs Vera Davydenko and Mike Rahbarian were not interviewed by any investigators prior to the execution of the search warrant.  (Davydenko Decl. ¶ 23; Mike Rahbarian Decl. ¶ 5.)

Regarding the checks allegedly tendered to Brasher's, the car dealership's bankruptcy trustee also possessed copies of checks that may have been tendered and delivered to Brasher's for payment of the new vehicles.  (Davydenko Decl. ¶ 18, Ex. 5.)  However, Defendants did not recall reviewing any checks for the new cars in their examination of documents provided by the trustee.  (Cawley Dep. 136:17–22; Smallwood Dep. 88:5–19.)

Notwithstanding the shortcomings in the investigation, Defendants Cawley and Smallwood remained convinced that Mike Rahbarian, Paiman Rahbarian, Vera Davydenko, Shayan Rahbarian, and Kamyar Soltani committed embezzlement and conspiracy to commit embezzlement in violation of California Penal Code sections 504a and 182, respectively. (Cawley Decl. ¶ 30; Smallwood Decl. ¶ 9.)  As such, Defendants proceeded to apply for a search warrant.

### B.  Defendants' Search Warrant Application

Defendants Cawley and Smallwood began preparing a warrant application to search Plaintiffs' businesses, personal vehicles, and residences for bank records and other evidence of embezzlement.  (Cawley Decl. ¶ 32, Ex. F.)  Based on their experience and training in financial fraud cases, Defendants believed these searches would reveal relevant evidence regarding any

---

[9] Defendants object, arguing these statements are inadmissible under the best evidence rule.  Defendants argue: "The authenticated recordings of the DMV interviews are the best evidence of what the witnesses said in those interviews.  Fed. R. Evid. 1002."  (Defs.' Objections 9:18–20 (citing Cawley Decl. Ex. E).)  "However, in light of the . . . resolution of" the judicial-deception claim below, Defendants' evidentiary objection "need not and will not [be] address[ed]."  *Gibson v. Cnty. of Riverside*, 181 F. Supp. 2d 1057, 1080 n.20 (C.D. Cal. 2002).

1   potential embezzlement or conspiracy.  (*Id.* ¶ 32; Smallwood Decl. ¶ 11.)  Defendants prepared

2   an affidavit that described the DMV investigation, relevant facts, and the bases to search the

3   suspects' residences, businesses, and vehicles.  (Cawley Decl. ¶¶ 33–35, Ex. F; Smallwood Decl.

4   ¶ 10.)

5        Defendants then went to the chambers of a Sacramento County superior court judge and

6   presented him with the affidavit and search warrant application.  (Cawley Decl. ¶ 39.)  These

7   documents included a statement of facts that described the DMV's original investigation.  (*Id.* Ex.

8   F, at 421–28.)  The affidavit detailed the payment dispute between Brasher's and Suzuki of

9   Sacramento, and noted how Brasher's had only recovered 19 of the new Suzuki vehicles that it

10  had financed for Suzuki of Sacramento.  (*Id.* Ex. F, at 426.)  Defendants declared that the

11  searches would hopefully locate records relating to any embezzlement or diversion of funds.  (*Id.*

12  Ex. F, at 431.)

13       Defendants detailed four specific sales of Suzuki vehicles in their affidavit and

14  represented that Brasher's records show Suzuki of Sacramento had not paid for those vehicles.

15  (*Id.* Ex. F, at 422–23.)  The affidavit went further and stated: "Suzuki of Sacramento sold or

16  transferred a total of 192 new Suzuki vehicles including the above four vehicles in the same

17  manner.  Information relating to these vehicles can be found in ATTACHMENT A."  (*Id.* Ex F, at

18  423.)

19       The contents of Attachment A are disputed by the parties.  After the criminal case was

20  dismissed, Defendant Cawley's copy of the original Attachment A was destroyed.  (Cawley Dep.

21  40:1–10.)  However, pursuant to department policy the records should have been retained until

22  2012, particularly since Plaintiffs filed this civil lawsuit in April 2010.  (*Id.* 41:11–17.)

23  Defendants declare that the original Attachment A included a list of 192 vehicles that were

24  allegedly involved in a conspiracy or embezzlement scheme.  (Cawley Decl. ¶ 35, Ex. F.)

25  Plaintiffs declare, on the other hand, that copies of Attachment A given to them during the

26  execution of the search warrant only included a list of 19 vehicles that had been repossessed by

27  Brasher's.  (Davydenko Decl. ¶¶ 15–17, Ex. 2; Paiman Rahbarian Decl. ¶ 4, Ex. 9; Shayan

28  Rahbarian Decl. ¶ 4, Ex. 13.)

After reviewing the application, the state superior court judge signed the search warrant later that day.  (Cawley Decl. Ex. F, at 432.)  The warrant authorized investigators to search for records pertaining to the vehicles, communications about transactions involving those vehicles, employment records, financial records, safe-deposit-box information, paper and electronic records (including VCRs and DVDs), and computer and digital devices capable of storing the above described information.  (*Id.* ¶¶ 35, 39, Ex. F, at 419.)  Notably, the warrant did not authorize the search or seizure of cash.  Defendants initially sought to include cash as property subject to seizure in their warrant application, but were advised by counsel that they should not do so.  (*Id.* ¶ 38, Ex. F.)

Defendants also omitted several facts from their search warrant application.  Defendants did not disclose to Judge Ransom the pending civil litigation between Brasher's and Luxury Imports.  (Opp'n 15:13–17:8; Cawley Decl. Ex. F.)  Moreover, Defendants did not disclose the full set of financial records available to them via the bankruptcy trustee or the uncashed checks held by Brasher's.  (Shayan Rahbarian Decl. ¶ 4; Cawley Decl. Ex. F; Cawley Dep. 136:17–22.)[10]

### C.  Execution of the Search Warrant

DMV investigators organized a tactical plan that included five separate teams of six-to-eight agents to carry out simultaneous searches of the five different properties listed in the search warrant.  (Cawley Decl. ¶ 40.)  Defendants Cawley and Smallwood conducted a briefing for all participating DMV agents a day prior to the execution of the search warrant.  (*Id.* ¶ 40.)  Lead Investigator Cawley distributed copies of the search warrant, explained the nature of the crimes being investigated, the identities of the suspects, the properties to be searched, and the types of evidence to be searched for and seized.  (*Id.* ¶ 41, Ex. F.)

The following day DMV agents simultaneously executed their searches at the five

---

[10] Defendants vociferously object to admission of any mention of these uncashed checks, and the parties have traded motions and letters concerning the admissibility of these uncashed checks.  Defendants argue: "Plaintiffs have proffered evidence to this Court that purports to show that Luxury Imports, Inc. dba Suzuki of Sacramento (SOS) tendered checks to Brasher's allegedly to pay for new cars floored by Brasher's and later sold by SOS. . . . None of this evidence is admissible in opposition to the defendants' summary judgment motion because plaintiffs withheld the evidence until after the close of discovery, in violation of Rule 26 of the Federal Rules of Civil Procedure. Rules 26 and 37 prohibit plaintiffs from using that evidence to oppose the motion."  (Defs.' Objections 1:27–2:8.)  "However, in light of the . . . resolution of" the judicial-deception claim below, this evidentiary objection "need not and will not [be] address[ed]."  *Gibson*, 181 F. Supp. 2d at 1080 n.20.

1    locations. (*Id.* ¶ 42.) Plaintiffs Paiman Rahbarian and his two children were asleep at the time

2    officers executed the search warrant at his residence. (Paiman Rahbarian Decl. ¶ 3.) After being

3    awoken by a loud "boom," Paiman Rahbarian saw agents in his house with their weapons drawn.

4    (*Id.* ¶ 3.) The agents instructed him and his children to wait outside of the house. (*Id.* ¶ 3.) At

5    that same time, agents executed a search at Vera Davydenko's business premises and inquired

6    about the 19 repossessed vehicles. (Davydenko Decl. ¶ 11.) Pursuant to the search warrant,

7    DMV agents seized DVDs, VCR tapes, financial records, digital storage devices, and other

8    property. (Cawley Decl. ¶ 48; Davydenko Decl. ¶ 12l; Paiman Rahbarian Decl. ¶ 6.)

9        Meanwhile, Defendants Cawley and Smallwood were executing the search warrant at the

10   residence of Kamyar Soltani, who is not a plaintiff in this case. (Cawley Decl. ¶ 42; Smallwood

11   Decl. ¶ 12.) While Defendants were searching the Soltani residence, other DMV agents

12   searching Plaintiff Mike Rahbarian's residence discovered a safe containing approximately

13   $90,000 in cash divided into separate envelopes of less than $10,000 each. (Cawley Decl. ¶ 43;

14   Mike Rahbarian Dep. 53:20–55:1.) Defendant Cawley drove to Mike Rahbarian's residence after

15   agents notified him of this discovery. (Cawley Decl. ¶ 44.)

16        After arriving at the residence, Defendant Cawley examined the currency and noted that

17   the quantity of cash in each envelope was just below the threshold for a "Suspicious Activity

18   Report." (*Id.* ¶ 43.) While the search warrant did not provide for the seizure of cash, Defendant

19   Cawley decided to seize the cash because he believed it to be evidence of the suspected criminal

20   behavior of embezzlement. (*Id.* ¶¶ 45–46.) He took custody of all property seized and filed a

21   formal inventory of the items seized at each location. (*Id.* ¶¶ 48–49, Ex. G.)

22        **D. Return of the Seized Property**

23        After the criminal investigation ended, Plaintiffs indicated that they recovered all seized

24   items and signed receipts for their property. (*Id.* ¶¶ 50–51, Ex. H & I.) Plaintiffs now claim,

25   however, that DMV agents damaged certain property and failed to return all items seized during

26   the search. (Mike Rahbarian Decl. ¶ 4; Paiman Rahbarian Decl. ¶ 6; Davydenko Decl. ¶ 17;

27   Davydenko Dep. 111:6–20, 112:7–17.)

28        Mike Rahbarian acknowledges that the $90,000 in cash seized from the safe was returned.

1  (Cawley Decl. ¶ 50; Mike Rahbarian Decl. ¶ 4.)  But Mike Rahbarian avers that his wife had to

2  spend thousands in legal fees to have the cash returned.  (Cawley Decl. ¶ 50; Mike Rahbarian

3  Decl. ¶ 4.)  Plaintiff Paiman Rahbarian claims DMV agents never returned personal computers,

4  cameras, and documents.  (Paiman Rahbarian Decl. ¶ 6.)[11]  Plaintiff Vera Davydenko maintains

5  that hard drives returned to her were not functional.  (Davydenko Dep. 111:6–20, 112:7–17.)

6  **STANDARD**

7       Summary judgment should be granted "if the movant shows that there is no genuine

8  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

9  Civ. P. 56(a).  "In essence," the inquiry is "whether the evidence presents a sufficient

10  disagreement to require submission to a jury or whether it is so one-sided that one party must

11  prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

12  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

13  rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

14  speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317,

15  327 (1986) (quoting Fed. R. Civ. P. 1).

16       The moving party bears the initial burden of showing the Court either "that there is an

17  absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325, or by

18  submitting affirmative "evidence negating an essential element of the nonmoving party's claim or

19  defense." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir.

20  2000).  The burden then shifts to the nonmoving party, which "must establish that there is a

21  genuine [dispute] of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

22  U.S. 574, 585 (1986).

23       To carry this burden, the non-moving party must "do more than simply show that there is

24  some metaphysical doubt as to the material facts."  *Id.* at 586.  "The mere existence of a scintilla

25  of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably

26

27  [11] Defendants object to the admissibility of these statements, arguing they "are irrelevant because they have nothing to do with the issues on summary judgment, and because they relate to alleged misconduct by strangers to this lawsuit (DMV agents other than defendants Cawley and Smallwood)."  (Defs.' Objections 9:11–14 (citing Fed.

28  R. Evid. 402).)  "However, in light of the . . . resolution of" the property-destruction claim below, this evidentiary objection "need not and will not [be] address[ed]." *Gibson*, 181 F. Supp. 2d at 1080 n.20.

11

find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The parties must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Further, Local Rule 260(b) prescribes:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

E.D. Cal. L.R. 260(b). If the nonmovant does not "specifically" controvert duly supported "facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." *Beard v. Banks*, 548 U.S. 521, 527 (2006).

In deciding summary judgment, the Court views "the evidence in the light most favorable" to the non-moving party. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009). "All justifiable inferences are to be drawn" in the nonmovant's favor, and the non-movant's "evidence is to be believed." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Anderson*, 477 U.S. at 252.

**ANALYSIS**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Plaintiffs challenge the constitutionality of the searches of their homes, arguing Defendants Smallwood and Cawley procured the warrant for the searches through judicial deception, seized $90,000 in cash without a warrant, executed the search in an unreasonable manner, and damaged and destroyed their personal property. Plaintiffs sue Defendants in their individual capacities for

12

damages under 42 U.S.C. § 1983.  Defendants move for summary judgment, arguing Plaintiffs have not met their burden concerning their judicial-deception, cash-seizure, and property-destruction claims.  Additionally, Defendants argue Plaintiffs' § 1983 claim for unreasonable execution of the search fails because Defendants did not directly participate in the search, and there can be no *respondeat superior* liability under § 1983.  For the reasons stated below, the Court ultimately concludes there is no genuine dispute of material fact on Plaintiffs' judicial-deception, cash-seizure, and property-destruction claims; however, because Plaintiffs point to evidence in the record that Defendants directed the searches in question, there exists a genuine dispute of material fact on Plaintiffs' unreasonable search execution claim, precluding summary judgment.

### A.  Judicial-Deception Claim

Plaintiffs seek damages under 42 U.S.C. § 1983 alleging Defendants fraudulently obtained the warrant to search their homes through judicial deception, in violation of the Fourth Amendment.  Defendants move for summary judgment on this claim.  Defendants argue Plaintiffs have not produced sufficient evidence that the affidavit for warrant—on which probable cause for the warrant was based—included false statements, or any evidence that Defendants Smallwood and Cawley knowingly or recklessly made any such false statements or omitted material facts.  (Mot. Summ. J. 15:6–8.)  Moreover, Defendants argue that—even assuming the allegedly false statements were made—Plaintiffs have not shown those statements were material to the finding of probable cause.  (Defs.' Reply Brief in Supp. Mot. Summ. J. ("Reply") 9:13–10:4, ECF No. 46.)  Plaintiffs counter arguing that Cawley and Smallwood's affidavit (a) falsely represented to the magistrate that Plaintiffs had embezzled or stolen 192 cars, (b) omitted the fact that 19 cars had been repossessed by a financing company, (c) omitted the fact that the bankruptcy trustee possessed the car dealership's financial records, (d) omitted the fact that there was an ongoing civil action between a number of plaintiffs and the financing company, and (e) omitted the fact that Plaintiffs had in fact paid for 173 vehicles by check.  (Opp'n 6:20–15:12.)  Plaintiffs contend these misrepresentations and omissions were material to the magistrate's finding of probable cause.  (*Id.* at 16:14–21, 19:1–8.)

"It is clearly established that judicial deception may not be employed to obtain a search warrant." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 155–56 (1978)).  For Plaintiffs' "judicial deception claim to survive summary judgment," Plaintiffs must (1) "make a substantial showing" of  Defendants' "deliberate falsehood or reckless disregard for the truth," *Chism v. Washington*, 661 F.3d 380, 386 (9th Cir. 2011) (quoting *Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997)) and (2) establish that the allegedly false statements "were material to the finding of probable cause." *KRL*, 384 F.3d at 1117 (citing *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)).  The first element—a deliberate or reckless false statement or omission—is a question of fact.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009).  The second element—materiality—is for the Court and may be decided on summary judgment.  *See Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) ("Materiality is for the court, state of mind is for the jury.").[12]

### 1. Deliberate or Reckless Deception

Concerning the first element of their judicial-deception claim, Plaintiffs "must demonstrate that" Officers Cawley and Smallwood "acted deliberately or with reckless disregard for the truth in preparing the affidavit." *Chism*, 661 F.3d at 387.  "Clear proof of deliberation or recklessness is not required" to survive summary judgment, but Plaintiffs must make a "substantial showing." *Id.* at 387–88 (alterations and internal quotation marks omitted) (quoting *United States v. Stanert*, 769 F.2d 1410 (9th Cir. 1985)).  Plaintiffs need not show Defendants had the specific "intent to mislead the judge," *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1118 (9th Cir. 1997); however, "[o]missions" and "misstatements resulting from negligence," "good faith mistakes," or "an officer's erroneous assumptions about the evidence" will not invalidate an affidavit that "on its face establishes probable cause." *Ewing*, 588 F.3d at 1224 (quoting *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978)).  Thus, a merely sloppy investigation culminating in a search warrant—without a showing of deliberation or recklessness—will not

---

[12] Defendants also assert qualified immunity as a defense.  But the Ninth Circuit has held that "governmental employees are not entitled to qualified immunity on judicial deception claims." *Chism*, 661 F.3d at 393 (reasoning that "if an officer submitted an affidavit that contained statements he knew to be false . . . [,] he cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost.").  Therefore, the Court need not, and does not, address Defendants' qualified immunity argument.

1   support a judicial-deception claim. *Cf. McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d

2   415, 418–19 (4th Cir. 2005) ("The fact that Livingston did not conduct a more thorough

3   investigation before seeking the . . . warrant does not negate . . . probable cause . . . .").

4         Plaintiffs' proffered evidence shows, at most, a sloppy investigation; however, there is no

5   evidence—let alone the required substantial showing—that Defendants, Officers Cawley and

6   Smallwood, acted deliberately or recklessly to mislead the magistrate.  For example, Plaintiffs

7   contend Defendants failed to disclose to the magistrate that Plaintiffs tendered checks to the

8   finance company for the cars.  Plaintiffs are correct that that these checks were omitted from the

9   search warrant application; however, they offer no evidence that Defendants Cawley or

10  Smallwood knew about these checks when they applied for the warrant—insufficient evidence to

11  support a finding that Defendants deliberately misled the magistrate.  Plaintiffs contend

12  Defendants acted recklessly by failing to investigate whether checks were in fact tendered;

13  however, the record shows Defendants obtained records indicating $4 million had not been

14  transferred to the finance company, and although officers "may not close [their] eyes to facts that

15  would clarify the situation, . . . once an officer has established probable cause, he may end his

16  investigation." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009).

17        Moreover, review of the warrant-application affidavit reveals that many of Plaintiffs'

18  asserted misrepresentations and omissions by Defendants, were, in fact, included in the

19  application for search warrant, contrary to Plaintiffs' assertions.  For example, Plaintiffs contend

20  Defendants misrepresented to the magistrate that Plaintiffs had embezzled or stolen 192 cars and

21  omitted the fact that 19 cars had been repossessed by a financing company.  But the evidence

22  does not support this contention.  Instead, the warrant application shows that Defendants applied

23  for a search warrant to find records of embezzlement, not to find the missing or stolen cars.

24  (Cawley Decl. Ex. F, at 417.)  In fact, Defendants conspicuously disclosed in their affidavit that

25  19 of the 192 cars had been repossessed by the financing company.  (*Id.* Ex. F, at 422–24, 426.)

26        Even Plaintiffs' most troubling circumstantial evidence does not support a finding of

27  deliberation or recklessness.  Plaintiffs point to evidence that Defendant Smallwood had an

28  improper motive in investigating Plaintiffs: Smallwood told the financing company's

15

representatives that "criminal charges would hopefully result in [Plaintiffs] offering to repay [the financing company] as part of a plea." (Decl. Kolb ¶ 11.)  Considered in the light most favorable to Plaintiffs, Smallwood's statement is circumstantial evidence that Smallwood was improperly motivated to assist the financing company in obtaining repayment, rather than investigate criminal wrongdoing.  But Defendants contend this statement was made more than a year after the application for search warrant was prepared, and there is no evidence to the contrary.  (*See id.* (describing an interview but failing to indicate whether the interview was conducted before the search-warrant application was prepared).)  Although probative of a problematic criminal investigation, this evidence does not support a finding of deliberate intent to mislead the magistrate at the time Defendants applied for the search warrant.

In short, Plaintiffs proffer no evidence that Defendants acted deliberately to mislead the magistrate, or acted with reckless disregard for the truth.  Although Plaintiffs' evidence generally impeaches Defendants' overall investigation, it does not show judicial deception in the specific context that matters—the warrant application.  Thus, Plaintiffs fail to make their required substantial showing on this necessary element.

### 2. *Materiality of the False Statements and Omissions*

Even if Plaintiffs had shown false statements and omissions were recklessly or deliberately made, the Court finds that these allegedly false statements were not material to the magistrate's finding of probable cause.  To meet the materiality element, Plaintiffs must show that "but for the dishonesty," there would not have been probable cause to support the search warrant.  *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (quoting *Hervey v. Estes*, 65 F.3d 784, 788–89 (9th Cir. 1995)).  If false statements were submitted to the magistrate, the court "purges those statements and determines whether what is left justifies issuance of the warrant." *Ewing*, 588 F.3d at 1224.  "If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause." *Id.*  "The omission of facts rises to the level of misrepresentation only if the omitted facts 'cast doubt on the existence of probable cause.'" *Id.* at 1226 (quoting *United States v. Johns*, 948 F.2d 599, 606–07 (9th Cir. 1991)).

Here, Plaintiffs assert Defendants made the following misrepresentations and omissions:

- Defendants falsely represented to the magistrate that Plaintiffs had embezzled or stolen 192 cars, omitting the fact that 19 cars had been repossessed by the financing company;

- Defendants omitted the fact that the bankruptcy trustee possessed the car dealership's financial records;

- Defendants omitted the fact that there was an ongoing civil action between a number of plaintiffs and the financing company—the alleged victim of the crime under investigation; and

- Defendants omitted the fact that Plaintiffs had in fact paid for 173 vehicles by check.

Assuming the validity of Plaintiffs' contentions, purging the allegedly false statements, and supplementing the omitted information, the Court finds that "what is left justifies the issuance of the warrant." *Ewing*, 588 F.3d at 1224.  Here, purging the 19 repossessed cars, the application still evinces that 173 cars were sold by Plaintiffs for which they were never paid.  Even assuming Plaintiffs tendered checks for these 173 cars, the record shows that the checks had not been cashed when Suzuki of Sacramento declared bankruptcy.  Thus, $4 million remained missing. Moreover, supplementing the application for the warrant to search for records with the ongoing civil litigation between Plaintiffs and the financing company over this missing money does not undermine the ultimate finding of probable cause.  Further, Plaintiffs' contention that the bankruptcy trustee's possession of their financial records would have obviated the need to search for records of embezzlement assumes—without support—that the bankruptcy trustee possessed *all* records; whereas the magistrate could have reasonably concluded that Plaintiffs withheld potentially incriminating records from the bankruptcy trustee.  Since, based on the purged and supplemented record, the magistrate could have reasonably concluded the particular items to be seized—record evidence of the embezzlement proceeds—could have been found in the particular places to be searched, the warrant would still have been supported by probable cause.

Therefore, the Court finds that the asserted misrepresentations and omissions were immaterial to the finding of probable cause, and the portion of Defendants' motion seeking summary judgment on Plaintiffs' judicial-deception claim is GRANTED.

**B.  Cash-Seizure Claim**

Plaintiffs allege that Defendants illegally seized approximately $90,000 in cash from a

1   safe in the home of Plaintiffs Mike Rahbarian and Fakhri Attar in violation of the Fourth

2   Amendment.  Defendants move for summary judgment on this claim arguing the cash was in

3   "plain view" during the execution of the search warrant for financial records.  As Plaintiffs point

4   out, the search warrant did not provide for the seizure of cash, even though Defendants "initially

5   sought to include [in their warrant application] cash as property subject to seizure, but were

6   advised [by counsel] that they could not do so."  (Opp'n 27:10–14 (citing Cawley Decl. ¶ 38).)

7        "[S]eizures inside a [person]'s house without warrant are *per se* unreasonable," "subject

8   only to a few specifically established and well delineated exceptions."  *Coolidge v. New*

9   *Hampshire*, 403 U.S. 443, 478, 455 (1971).  Under the "plain-view" exception, if "the police have

10  a warrant to search a given area for specified objects, and in the course of the search come across

11  some other article of incriminating character," the police may lawfully seize the incriminating

12  object.  *Horton v. California*, 496 U.S. 128, 135 (1990).  To meet this exception, "the

13  incriminating nature of the evidence [must have been] 'immediately apparent'" such that the

14  seizing officers "reasonably believed that the[] items . . . found . . . were illegal."  *United States*

15  *v. Stafford*, 416 F.3d 1068, 1076–77 (9th Cir. 2005) (citations omitted).

16       In this case, the warrant authorized the DMV agents to search for financial statements,

17  bank records, and documents concerning the proceeds from the sale of various cars.  The location

18  where the cash was discovered—a safe inside the residence of the targets of the investigation—

19  was a logical place to look for these documents; thus, the officers were "lawfully searching the

20  area where the evidence [wa]s found."  *Roe v. Sherry*, 91 F.3d 1270, 1272 (9th Cir. 1996) (citing

21  *Horton*, 496 U.S. at 135–36)); *accord People v. Gallegos*, 96 Cal. App. 4th 612, 626 (2002)

22  ("Because the warrant authorized a search for documents, the officers could properly search

23  anywhere documents might reasonably be found.  Documents may be stored in many areas of a

24  home, car, motor home or garage. . . .  Safes are often used precisely for the purpose of storing

25  documents.").  Thus, the issue is whether the incriminating nature of the $90,000 in cash was

26  "immediately apparent."

27       Defendants contend the investigating officers reasonably believed that this large amount

28  of currency was connected to the embezzlement crime under investigation—"a cash crime

18

1    [concerning] more than $4 million in misappropriated funds." (Mot. Summ. J. 20:6–12.)

2    Moreover, Defendants argue the "quantity of cash in each envelope"—just under $10,000—"was

3    suggestive of possible criminal activity because it was below the threshold for a Suspicious

4    Activity Report." (*Id.* at 20:1–2 (citing Cawley Decl. ¶ 43).) Plaintiffs "maintain that the . . .

5    'incriminating nature' of $90,000 could not have been 'immediately apparent to investigators in a

6    case where they claimed $4.2 million was missing . . . .'" (Opp'n 27:3–11.) Plaintiffs also argue

7    the seizure was illegal because the underlying warrant was not supported by probable cause, an

8    argument the Court need not address because the Court previously found that probable cause

9    supported the warrant.

10          The Court finds that the officers reasonably believed that the $90,000 in cash in separate

11   envelopes of $10,000 each was evidence of a crime. The DMV agents conducted the search to

12   investigate the residence owners on suspicion of embezzlement. The $90,000 in currency itself

13   was suspicious. Moreover, the quantity of currency in each envelope—slightly less than

14   $10,000—was also suspicious. *Cf.* 31 C.F.R. § 1010.330(a)(2) ("Currency in excess of $10,000

15   received by a person . . . must be reported . . . ."). Taken together, Defendants' evidence indicates

16   an absence of evidence to support Plaintiffs' claim that the cash was illegally seized, which shifts

17   the burden to Plaintiffs to establish "there is a genuine [dispute] of material fact." *Matsushita*,

18   475 U.S. at 585. Plaintiffs' argument that $90,000 is not evidence of a crime concerning $4

19   million, unsupported by citation to evidence in the record, is insufficient to meet this burden.[13]

20          Therefore, the portion of Defendants' motion seeking summary judgment on Plaintiffs'

21   cash-seizure claim is GRANTED.

22          **C. Unreasonable Search Execution Claim**

23          Plaintiffs seek damages under § 1983 alleging that, in executing the search warrant, DMV

24   agents acted unreasonably because they broke "through the front door," "forced their way into

25   [Plaintiffs'] residence . . . with their firearms drawn," "surrounded [P]laintiffs," "pointed their

26   _____

27       [13] Plaintiffs also argue: "Defendants knew or should have known that [Plaintiffs,] the Rahbarian family[,] had emigrated from Iran, and that having substantial amounts of cash was not unusual for persons of Iranian heritage . . . ." (Opp'n 27:6–9.) But Plaintiffs fail to cite any evidence to support their "Iranian-heritage" assertion, and,

28   therefore, the Court need not, and does not, consider this argument on a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1) (stating that parties must cite "to particular parts of materials in the record").

firearms at [P]laintiffs," and "yelled at [P]laintiffs . . . , needlessly causing great emotional and mental distress and trauma" in violation of the Fourth Amendment.  (FAC ¶¶ 15–16.)  Defendants move for summary judgment on this claim, arguing there is no genuine dispute of material fact whether Defendants "Dan Cawley and Bruce Smallwood" actually "carried out the search warrant."  (Mot. Summ. J. 21:27–22:2.)  Because "*respondeat superior* liability does not exist under § 1983," Defendants argues summary judgment should be granted.  (*Id.* at 20:23–27.)  Plaintiffs counter there is sufficient evidence that Defendants directed or participated in the asserted constitutional violation because "Defendants admit they were the 'lead investigators in this case.'"  (Opp'n 27:22–28:1 (quoting Cawley Decl. ¶ 41).)

Defendants' evidence—which Plaintiffs do not contest—shows that Defendants Cawley and Smallwood were not at the scene of the actual execution of the search warrant complained of.  Since municipal officers "cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), the issue is whether Defendants participated in or directed the execution of the search warrants even though they were not actually at Plaintiffs' residence.

"A supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'"  *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).  Defendants Cawley and Smallwood contend they did not supervise the execution of the search warrant, and at the time, were merely "rank-and-file [i]nvestigator[s], not . . . supervisor[s]."  (Mot. Summ. J. 23:7–13.)  But the evidence does not support Defendants' argument.

Defendants' evidence show that Defendants were not "rank-and-file investigators," but instead the "lead investigators in this case."  (Cawley Decl. ¶¶ 40–41.)  Specifically, Cawley conducted the briefing of the DMV agents before the execution of the warrant.  He handed out the warrant, explained the suspected crimes, and identified the suspects and the properties to be searched.  Defendants together developed the tactical plan.  Plaintiffs are correct that this evidence permits a reasonable inference that Defendants were personally involved in the decision

1  of other DMV agents to break down doors and enter with guns drawn.

2      Viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable

3  inferences in their favor, there is a genuine dispute of material fact whether Defendants "directed

4  the violations" complained of.  *Maxwell*, 708 F.3d at 1086.  Therefore, this portion of

5  Defendants' motion for summary judgment is DENIED.

6      **D.  Property-Destruction Claim**

7      Plaintiffs allege Defendants seized and failed to return their personal property, including

8  videotapes and DVDs of great sentimental value.  (FAC ¶¶ 18–21.)  Defendants move for

9  summary judgment on this claim, arguing there is "no evidence that the [D]efendants in this

10  action did anything to damage or destroy any of their property."  (Mot. Summ. J. 24:8–10.)

11  Plaintiffs do not respond to this argument in their opposition.

12      "[O]fficers executing a search warrant occasionally 'must damage property in order to

13  perform their duty.'"  *Liston*, 120 F.3d at 979 (quoting *Dalia v. United States*, 441 U.S. 238, 258

14  (1979)).  Thus, "the destruction of property during a search does not necessarily violate the

15  Fourth Amendment"; rather, to survive summary judgment on a Fourth Amendment property-

16  destruction claim, Plaintiffs must show Defendants' conduct amounted to "unnecessarily

17  destructive behavior, beyond that necessary to execute a warrant effectively."  *Mena v. City of*

18  *Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000) (internal quotation marks and citations omitted).

19      Here, Defendants' evidence shows that Defendants made a written record of all seized

20  property.  Plaintiffs admitted in depositions that they signed receipts acknowledging return of all

21  property.  Defendants testified that they never damaged the property.  The Court finds that this

22  evidence establishes that Defendants' conduct was not "unnecessarily destructive" and, thus,

23  "negat[es] essential element[s] of the nonmoving party's claim."  *Nissan Fire & Marine Ins.*, 210

24  F.3d at 1102.  Thus, because Plaintiffs do not point to any controverting evidence, Plaintiffs do

25  not meet their burden to "establish that there is a genuine [dispute] of material fact . . . ."

26  *Matsushita*, 475 U.S. at 585.  Therefore, the portion of Defendants' motion seeking summary

27  judgment on Plaintiffs' property-destruction claim is GRANTED.

28  ///

**CONCLUSION**

Based on the foregoing, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

**OPPORTUNITY TO RESPOND**

Any party may file and serve written objections to any part of this tentative ruling no later than 14 days after the date on which this order is filed.  Any objection must specify the requested, correction, addition, or deletion.  In the event a party elects to file and serve objections, the Court may set a hearing date as needed.  If no objection is filed, this tentative ruling will become final without further order of this Court.

IT IS SO ORDERED

DATED:        Dated: August 7, 2013

Troy L. Nunley
United States District Judge

22