1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                        EASTERN DISTRICT OF CALIFORNIA

9

10   MIKE RAHBARIAN; FAKHRI ATTAR;          No.  2:10-cv-00767-TLN-KJN
     PAIMAN RAHBARIAN; and VERA
     DAVYDENKO, on behalf of herself and as
11   guardian ad litem for N.R., a minor, and
     M.R., a minor,
12                                           **ORDER**
                  Plaintiffs,
13
            v.
14
     DANIEL CAWLEY and BRUCE
15   SMALLWOOD,

16                  Defendants.

17

18

19        The Court heard argument on Plaintiffs' Motion to Reopen Discovery, to Impose

20   Sanctions, and to Obtain a Protective Order to Preserve Evidence, (ECF No. 59), on September

21   19, 2013.  Cyrus Zal appeared for Plaintiffs, and David W. Hamilton appeared for Defendants.

22   Further, a tentative ruling from this Court, granting in part and denying in part Defendants'

23   Motion for Summary Judgment, (ECF No. 64), is also pending.  The Court has reviewed the

24   moving papers as well as the complete record in this case, and has considered counsels'

25   representations and arguments at the hearing on Plaintiffs' pending motion.  The record shows

26   defense counsel's conduct in this case not only fell below the obligations of discovery, but also

27   professional norms of civility to opposing counsel and candor to the tribunal.  Accordingly, and

28   for the reasons that follow, this order issues imposing monetary sanctions in the amount of

                                                1

1  $999.99 against counsel for Defendants, David W. Hamilton.

2        Plaintiffs' counsel is not without fault as well, however.  As he himself admitted at the

3  hearing on September 19, 2013, once counsel for Defendants offered to allow Plaintiffs' counsel

4  to examine the documents in possession of the California Attorney General's Office, Plaintiffs'

5  counsel should have inspected those documents while Defendants' Motion for Summary

6  Judgment and Plaintiffs' Motion to, *inter alia*, Reopen Discovery was pending before the Court.

7  Moreover, much of the disharmony that arose in the weeks leading up to the deadline for

8  dispositive motions, and Defendants' filing of the currently pending Motion for Summary

9  Judgment, likely could have been avoided if Plaintiffs' counsel had diligently pursued discovery

10  before the discovery cutoff date.  Thus, and for the reasons that follow, the Court does not grant

11  Plaintiffs the relief they seek.  Nonetheless, the Court will not punish Plaintiffs for the indolence

12  of Plaintiffs' counsel, and will not issue a final ruling on Defendants' pending Motion for

13  Summary Judgment without affording Plaintiffs an opportunity to examine these documents and

14  present their objections to the Court's tentative ruling, in the manner prescribed in detail below.

15  **BACKGROUND**

16        The factual background of this case is set out in great detail in the Court's tentative ruling

17  on Defendants' Motion for Summary Judgment, (*see* ECF No. 64), and need not be recited again

18  here.  Thus, the factual background discussed below only concerns discovery of various

19  documents in the possession of the California Attorney General's Office, and this information is

20  drawn from the parties' filings and representations to the Court at the hearing on September 19,

21  2013.

22        Defendants Cawley and Smallwood are DMV investigators who investigated Plaintiffs for

23  suspected embezzlement.  Plaintiffs were involved (as owners, employees, or family members of

24  the same) in a car dealership.  Defendants suspected that Plaintiffs essentially borrowed money to

25  purchase new cars (to be re-sold to customers) from a financing company called Brasher's, sold

26  the cars to customers, embezzled the sales proceeds, and then declared bankruptcy with more than

27  $4 million missing.

28        Defendants' investigated Plaintiffs on suspicion of embezzlement; the resulting

1   investigation culminated in a search (pursuant to a search warrant) of Plaintiffs' homes and

2   seizure of Plaintiffs' property, and in an ultimately unsuccessful criminal prosecution.  The

3   documents from this criminal prosecution pertain to the decision on Plaintiffs' pending Motion.

4   At the hearing on Plaintiffs' pending Motion, according to statements made by counsel for

5   Defendants, David W. Hamilton dated September 19, 2013, six boxes of bank-record documents[1]

6   pertaining to this criminal investigation remain in the possession of the California Attorney

7   General's Office in Sacramento.

8          Through this action, Plaintiffs seek damages from Defendants under 42 U.S.C. § 1983

9   alleging, *inter alia*, Defendants deceived the magistrate in their search warrant application.

10         Importantly for decision on Plaintiffs' pending motion, the search warrant application did

11  not include information concerning certain checks that, Plaintiffs claim, were tendered to the

12  financing company, Brasher's, to pay for the cars.  These checks became a source of significant

13  contention during the course of discovery, as discussed further below.

14                          ***Cawley's Deposition on March 14, 2013***

15         At Plaintiffs' deposition of Defendant Cawley, Plaintiffs' counsel apparently confronted

16  Defendant Cawley with evidence of the above-referenced checks which, Plaintiffs contend, had

17  been tendered to Brasher's as payment for various new cars, and a heated exchange ensued.

18  According to Plaintiffs' counsel, after the deposition, counsel for Defendants, David W. Hamilton

19  "requested the deposition room be cleared of all parties except himself," Plaintiffs' counsel, "and

20  the court reporter.  Attorney Hamilton then proceeded to make a statement on the record that he

21  entitled 'Statement of Counsel Regarding Federal Rule of Civil Procedure 11.'"  (Decl. Cyrus Zal

22  in Supp. of Pl.'s Mot. ¶ 10, ECF No. 61.)

23         In this "Statement of Counsel," Hamilton accused Plaintiffs' counsel of attempting to use

24  evidence he knew was "fraudulent," and Hamilton threatened Plaintiffs' counsel with Rule 11

25  sanctions:

26              MR. HAMILTON: You can Title this Statement of Counsel
            Regarding Federal Rule of Civil Procedure 11.
27

28  _____

    [1] Counsel for Defendants' letter states there are five boxes, but at the hearing, he said there are six such
    boxes; however, this difference is immaterial.

                                         3

. . . . I now have an understanding, I think, . . . that you intend to offer in this lawsuit . . . these checks that you've shown us in this depositions—in these depositions, and claim that these were given to Brasher's and Brasher's actually [had been] paid for the vehicles, and that perhaps for mysterious reasons of their own maybe Brasher's didn't cash them all or didn't cash any of them and just held them.

And I just want to let you know and put you on notice that if you do this <u>we are going to be able to prove that this evidence you plan to offer is fraudulent</u> . . . .

So if you present this evidence, we are going to be able to prove that this is bad faith evidence and probably fraudulent evidence when we got to trial.

Now, I have a lot of experience in Federal Court. I don't know whether you have much experience there. I think you should before you do this think very carefully about Federal Rule Civil Procedure 11 and look up the Case Law on Rule 11 before you take that step.

I mean, you may be under the impression that, oh, well, if you lose this case and you get attorney fees, not a problem because your clients can't pay it or hidden their assets, or whatever.

Rule 11 allows the judge to impose attorney fees on you, and the last I looked, attorneys with my level of experience are being awarded in the range of $600 an hour for the work they do in civil rights cases. I have a lot of civil rights experience.

And so <u>if we are forced to go to trial and prove that your evidence is in bad faith and fraudulent, that's a violation of Rule 11, and we'll be asking Judge Burrell[2] to award us Rule 11 sanctions against you personally</u> . . . .

[I]f you want go forward with [this evidence], you're entitled to do that, but I want you to be on notice here <u>that this could cost you hundreds of thousands of dollars, you personally,</u> because this story you presented makes absolutely no sense.

(Dec. Zal, Ex. 1, Statement of Counsel re Fed. R. Civ. P. 11, at 3:1–7:8, ECF No. 61-1 (emphasis added).)

### *Ensuing Correspondence Between Counsel*

After this deposition, Plaintiffs' and Defense' counsel exchanged a series of letters. In a letter dated March 21, 2013, Plaintiffs' counsel demanded that Defendants:

---

[2] This case was originally assigned to the Honorable Garland E. Burrell, Jr., and following the appointment of the undersigned district judge, the matter was reassigned to the undersigned district judge on April 3, 2013. (ECF No. 49.)

4

> produce . . . copies forthwith of all the documents in [the possession
> of the California Attorney General's Office] that are required by
> Rule 26(a) to be produced and/or that were required to be produced
> pursuant to the demand for production of documents served on
> defendants, including but not limited to, all documents that were
> part of the criminal action prosecuted by your office against Paiman
> Rahbarian and Shayan Rahbarian, as well as all documents that
> were produced to Mr. Morgester by Klaus Kolb.

(Decl. Zal, Ex. 2, Letter to David W. Hamilton from Cyrus Zal, Mar. 21, 2013, at 6, ECF No. 61-

1.)  Mr. Morgester was the California Deputy Attorney General involved in the criminal

prosecution who signed off on the search warrant application, and Klaus Kolb was the criminal

defense lawyer who assisted the Rahbarians in the criminal prosecution which was ultimately

dismissed.

        After the discovery cutoff date had passed and after Defendants filed a motion for

summary judgment (ECF No. 24) (which remains pending), Hamilton sent Zal a letter, dated May

1, 2013, in which Hamilton stated as follows:

> [Y]ou persist in proffering this bogus evidence to the Court.  It is
> beyond me how you could possibly believe that those uncashed
> checks have any evidentiary value in this action. . . .  But in the
> interest of accommodating your requests we are willing to make
> [the criminal prosecution file of Deputy Attorney General
> Morgester] available to you.
>
>         This offer, however, comes with conditions.  We have five
> banker's boxes full of paper records . . . .  However, we see no
> reason why the defense should bear the cost of reproducing these
> irrelevant records to the plaintiffs.

(Decl. Zal, Ex. 5, Letter to Cyrus Zal from David W. Hamilton, May 1, 2013, at 1–2, ECF No. 61-

1.)

        In response, Plaintiffs' counsel requested that Defendants' counsel "join in a stipulation to

take defendants' MSJ hearing off calendar until plaintiffs have had a reasonable opportunity to

review the additional documents that were improperly not previously produced by defendants in

response to plaintiffs' discovery demands," and to allow Plaintiffs "to take further depositions of

defendants" and "DG Morgester."  (Decl. Zal, Ex. 6, Letter to David W. Hamilton from Cyrus

Zal, May 22, 2013, at 8, ECF No. 61-1.)  Moreover, Plaintiffs' counsel stated, "If we do not

receive written confirmation . . . that you will stipulate to taking defendants' MSJ motion off

1  calendar, we will file a motion to compel the inspection . . . , and we will seek monetary and other

2  sanctions against defendants." (*Id.* at 9.)  Defense counsel refused to take Defendants' Motion for

3  Summary Judgment off calendar, contending Plaintiffs' "arguments for delaying the summary

4  judgment hearing and reopening discovery are baseless."  (Decl. Zal, Ex. 7, Letter to Cyrus Zal

5  from David W. Hamilton, May 23, 2013, at 2, ECF No. 61-1.)  Regarding Plaintiffs' discussion of

6  a motion for monetary sanctions, Hamilton stated: "Finally, I will not respond yet again to your

7  baseless and intemperate remarks about Rule 11 sanctions.  I frankly do not have time to waste

8  responding to your inaccurate and hysterical ranting: please do not burden me with any more

9  correspondence on that subject." (*Id.*)

10      Plaintiffs moved for sanctions, a protective order, and an order reopening discovery, and

11  the Court heard argument on this motion, as discussed below.

12                              **DISCUSSION**

13      Under Rule 16(f), federal courts are empowered to impose sanctions, including those

14  authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney "fails to obey a scheduling or

15  other pretrial order."  "Rule 16 . . . give[s] courts very broad discretion to use sanctions where

16  necessary to insure not only that lawyers and parties refrain from contumacious behavior, already

17  punishable under the various other rules and statutes, but that they fulfill their high duty to insure

18  the expeditious and sound management of the preparation of cases for trial."  *Matter of Baker*,

19  744 F.2d 1438, 1440 (10th Cir. 1984) (en banc).  "A scheduling order 'is not a frivolous piece of

20  paper, idly entered, which can be cavalierly disregarded by counsel without peril.'. . .  Disregard

21  of the order . . . undermine[s] the court's ability to control its docket, disrupt the agreed-upon

22  course of the litigation, and reward the indolent and the cavalier."  *Johnson v. Mammoth*

23  *Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (citation omitted).  Moreover, the Local

24  Rules of this district adopt the professional conduct rules of California,[3] and California Rules of

25  Professional Conduct, Rule 5–100(A) states: "A member shall not threaten to present . . .

26  administrative . . . charges to obtain an advantage in a civil dispute."[4]

27  _____

        [3] "[T]he Rules of Professional Conduct of the State Bar of California . . . are hereby adopted as standards of
   professional conduct in this Court."  E.D. Cal. L.R. 180(e),

28      [4] "Administrative charges" as used in this provision are defined to mean "the filing or lodging of a

                                        6

1    Sanctions under Rule 16 and sanctions for violation of this Court's local rules of conduct

2    may issue without a finding of bad faith, *see Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone,*

3    *Inc.*, 275 F.3d 762, 769 (9th Cir. 2001) (affirming district court's imposition of sanctions even

4    though the conduct "was not intentional"); *Washburn v. Morgado*, 332 F. App'x 380, 383 (9th

5    Cir. 2009), and these sanctions may issue if a party reluctantly complies with discovery

6    obligations well after the discovery deadline, *Miltope Corp. v. Hartford Cas. Ins. Co.*, 163 F.R.D.

7    191, 194–95 (S.D.N.Y. 1995).  For example, in *Miltope Corporation v. Hartford Casualty*

8    *Insurance Co.*, the court imposed a $1,000 fine "payable to the Clerk of the Court" because a

9    party fulfilled its discovery obligations well after the discovery cutoff date. *Id.* at 194.  The court

10   reasoned "sanctions for violation of discovery and scheduling orders 'must be applied diligently

11   both "to penalize those whose conduct may be deemed to warrant such a sanction, and to deter

12   those who might be tempted to such conduct in the absence of such a deterrent."'" *Id.* (alteration

13   omitted) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980)); *see also*

14   Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 37(B)(2) (5th ed.

15   2013) ("Under . . . Rule 16(b)(3), for example, a scheduling order may set a date by which parties

16   are 'to complete discovery.' . . .  This has been held to permit the imposition of sanctions against

17   the party for discovery abuse . . . even in the absence of a prior order to compel."  (citing *McLeod,*

18   *Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990))).

19   In this case, the Court's Rule 16 scheduling order prescribed that all "discovery shall be

20   completed by April 27, 2012," (ECF No. 14), and this discovery cutoff date was later extended

21   until March 8, 2013, (ECF No. 33).  Nonetheless, it was not until May 1, 2013—well after the

22   discovery cutoff date and after Plaintiff's opposition to Defendant's Motion for Summary

23   Judgment was due—that Defendants offered to allow Plaintiffs to inspect five (or six)[5] banker's

24   boxes full of potentially relevant documents.  These documents were from the criminal

25   prosecution of Paiman and Shayan Rahbarian, plaintiffs in this action, for essentially the same

26   conduct at issue in this civil case.  Moreover, California Deputy Attorney General Hamilton's

27   complaint with a federal, state, or local government entity which may order or recommend . . . the imposition of a
     fine . . . ."  Cal. Rules Prof'l Conduct R. 5–100(B).

28         [5] *See supra* note 1.

1   conduct in discovery—accusing Plaintiffs' counsel of offering "fraudulent" and "bogus" evidence

2   (certain uncashed checks) and threatening Plaintiffs' counsel with "hundreds of thousands of

3   dollars" in sanctions against him "personally," when the California Attorney General's Office

4   apparently possessed documentary evidence of these checks since 2009—is just the type of

5   "contumacious behavior" Rules 16 and 37 prohibit.  *Baker*, 744 F.2d at 1440.  Further, although

6   the Court expresses no opinion of the matter, counsel for Defendants' threats may very well have

7   run afoul of California Rule of Professional Conduct 5–100(A), and thereby the local rules of this

8   Court.  *Cf. Lopez v. Banuelos*, No. 1:11-cv-466 AWI JLT, 2013 WL 4815699, at *1,8–9 (E.D.

9   Cal. Sep. 6, 2013) (Ishii, J.) (finding that the following threats contained in an email from a

10  California Deputy Attorney General, as counsel for the defendants, constitute a violation of Cal.

11  Rules of Prof'l Conduct R. 5–100, and Local Rule 180(e) thereby: "If [the section 1983 plaintiff]

12  sets foot in California, I bet he never leaves as there is a very real chance he will be arrested.  We

13  do intend to have both federal and state law enforcement present during the trial.").

14          Further, counsel for Defendants' attitude persisted at the hearing on Plaintiffs' Motion for

15  Sanctions and to Reopen Discovery.  Counsel for Defendants stated, "I never thought of

16  producing" the boxes of documents "because they had no bearing on the search warrant."  And

17  yet, counsel responded to the Court's questions about the boxes containing the documents as

18  follows:

19              THE COURT: Wait.  Let me stop you right there.  Therein lies the
                problem here.  The Government has six boxes of documents, and
20              you don't know what's in those six boxes of documents.  Is that
                what you're telling the court?

21
                MR. HAMILTON: Yes. . . . .
22

23  Counsel later explained:

24              MR. HAMILTON: . . . These boxes [containing] checks that were
                acquired six months after the search warrant didn't seem to be
25              relevant to anything and certainly weren't responses to the
                Plaintiff's discovery requests.
26
                THE COURT: How would you know that?  You just told the Court
27              that you didn't read all the documents in those six boxes . . . ?  . . . .
                Did you?
28

MR. HAMILTON: No.  Of course not.

In the opposition to Plaintiffs' motion for sanctions, Defendants argue sanctions are not warranted here because there is no "evidence . . . a party [or attorney] has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings," and Plaintiffs have not shown "bad faith . . . or other abusive conduct."  (Def.'s Opp'n to Plaintiffs' Mot. to Re-open Disc., for Issue & Monetary Sanctions, & for Protective Order 13:8–14:11, ECF No. 62.) However, the record in this case is to the contrary.  Deputy Attorney General Hamilton's Office, by his own admission, has possessed the uncashed checks—which Plaintiffs claim supports their judicial-deception claim—since at least 2009.  Yet, when confronted with this evidence at a deposition, counsel for Defendants reacted by accusing Plaintiffs' counsel of knowingly using "fraudulent" evidence and by threatening Plaintiffs' counsel with  "hundreds of thousands of dollars" in sanctions against Plaintiffs' counsel "personally."  Moreover, counsel for Defendants did not offer to turn over the boxes containing potentially relevant evidence (or inspect these boxes to ascertain for himself whether relevant evidence was contained therein) until after Plaintiffs' opposition to Defendants' motion for summary judgment was due.  This conduct at least raises the specter of bad faith.  *Cf. Hull v. Municipality of San Juan*, 356 F.3d 98, 101–02 (1st Cir. 2004) (finding bad faith because "the information withheld was too patent and too convenient, and the . . . deceit and grudging concessions too marked, to excuse the misstatements and omissions as merely careless.").

Nonetheless, the Court need not, and does not, make an express finding of bad faith, since counsel for Defendants' conduct violated this Court's Rule 16 scheduling order.  *See Lucas*, 275 F.3d at 769; *see also Martin Family Trust v. Heco/Nostalgia Enters. Co.*, 186 F.R.D. 601, 604 (E.D. Cal. 1999) ("Both courts and commentators agree that sanctions may be imposed for a party's unexcused failure to comply with a Rule 16 order, even if that failure was not made in bad faith." (collecting sources)).

In sum, the conduct of counsel for Defendants in this case violated Rule 16's prohibition of "contumacious behavior" and violated counsel's "duty to insure the expeditious and sound

9

1    management of the preparation of cases for trial." *Baker*, 744 F.2d at 1440.  Therefore, sanctions

2    in this case are warranted, and the Court must decide what manner of sanctions are appropriate.

3         Plaintiff asks for issue sanctions, monetary sanctions totaling $26,600 against Defendants

4    Cawley and Smallwood and their attorney David W. Hamilton (compensating Plaintiffs for

5    Plaintiffs' counsel time in bringing Plaintiffs' pending motion), and a protective order to preserve

6    the Search Warrant and its "Attachment A."  However, the Court is cognizant of the fact that

7    Plaintiffs' counsel exhibited a marked lack of diligence in discovery and also violated this Court's

8    Rule 16 scheduling order mandating that discovery be completed by March 8, 2013, (ECF No.

9    33).  Specifically, the record reveals that Plaintiffs continued to conduct discovery in this case

10   after the discovery cutoff date.  For example, it appears that Plaintiffs waited until the discovery

11   cutoff date elapsed to depose Defendant Cawley, who appears to be a key witness in this case.

12   Moreover, Plaintiffs' request to reopen discovery does not adequately explain why Plaintiffs

13   waited nearly three years after the date on which the Rule 16 scheduling order issued, September

14   28, 2010, (ECF No. 14), before finally deposing key witnesses in March of this year.  *See Chance*

15   *v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001) (observing that a court may

16   deny "further discovery if the movant has *failed diligently to pursue discovery in the past*."

17   (emphasis added)).

18        Therefore, in light of Plaintiffs lack of diligence in pursuing discovery in this matter, the

19   Court will not grant Plaintiffs the relief they seek.  Moreover, contrary to Plaintiffs' conclusory

20   assertions of document destruction of "Attachment A"—for which they offer no proof nor show

21   why "Attachment A" is material—there is no evidence that the parties themselves, Defendants

22   Cawley and Smallwood, are at fault for their attorney's behavior in this case.  As a leading

23   treatise observed, "[m]onetary sanctions are commonly used when counsel, rather than the client,

24   is the offender and it would not be fair in the circumstances to tax the client with his or her

25   lawyer's [conduct].  Counsel, instead, is personally charged."  JOSEPH, *supra*, § 38 (citing

26   *Simpson v. City of Philadelphia*, 660 F. Supp. 951, 952 (E.D. Pa. 1987) (imposing a monetary

27   sanction of $500 on defendants' attorney of record, reasoning: "The Rules require a minimum

28   standard of professionalism.  The conduct of defendants' attorney in this case falls below that

10

1   standard.")).

2       Therefore, the Court finds that a monetary sanction in the amount of $999.99 against

3   attorney of record for Defendants, David W. Hamilton, and not the parties themselves, is the

4   proper sanction for Defendants' violation of the Rule 16 scheduling order. *Baker*, 744 F.2d at

5   1442 ("If the fault lies with the attorney, that is where the impact of sanction should be lodged. If

6   the fault lies with the clients, that is where the impact of the sanction should be lodged.").

7       Further, the Court finds that Plaintiffs have not shown that a reopening of discovery is

8   warranted, in light of Plaintiffs' counsel's lack of diligence in pursuing discovery and Plaintiffs'

9   own violation of the Rule 16 scheduling order. *See Miltope*, 163 F.R.D. at 195 ("[P]arties and

10   counsel ignore discovery orders and deadlines at their peril. There is no excuse for failing to

11   comply with discovery deadlines, and if an extension is necessary, it must be sought before

12   expiration of the deadline."). Accordingly, the Court will not award Plaintiffs attorneys' fees or

13   expenses, and instead orders counsel for Defendants to pay the fine to the Clerk of the Court.

14   Nonetheless, the Court is reluctant to punish Plaintiffs themselves for the indolence of their

15   attorney. *See Baker*, 744 F.2d at 1442. Accordingly, the Court will allow Plaintiffs 30 days to

16   investigate the contents of the boxes and to file objections to the Court's tentative ruling on

17   Defendants' Motion for Summary Judgment in the manner prescribed below.

18       **CONCLUSION**

19       **A.    Additional 30 Days to Investigate Contents of Boxes**

20       In light of the Defendants' failure to produce documents which may be pertinent to

21   Plaintiffs' opposition to Defendants' pending motion for summary judgment, Plaintiffs are

22   HEREBY GRANTED 30 days from the date this order issues to investigate the contents of the

23   boxes of evidence from the criminal prosecution which are in the possession of the California

24   Attorney General's Office as referenced in the hearing.

25       Plaintiffs may then file any such further objections to the Court's tentative summary

26   judgment ruling (ECF No. 64) Plaintiffs deem appropriate no later than 45 days after the date on

27   which this order issues. The objections must establish a genuine dispute of material fact

28   precluding summary judgment on Plaintiffs' judicial-deception claim for damages under 42

1   U.S.C. § 1983 (or other claim or claims) (showing both intent or recklessness to mislead the

2   magistrate *and* materiality of the omitted information).  The objections must include specific

3   citations to attached exhibits indicating a genuine dispute of material fact arises from newly

4   discovered evidence.

5            Alternatively, Plaintiffs may file a motion under Federal Rule of Civil Procedure 56(d)

6   that includes a sworn declaration by Plaintiffs' counsel that "specifically identifies . . . relevant

7   information" "essential to justify [Plaintiffs'] opposition" and that explains (with citations to

8   attached exhibits containing documentary evidence from the above-referenced boxes) counsel's

9   factual "basis for believing that the information sought actually exists."  *Emp'rs Teamsters Local*

10  *Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004).

11           The scope of the above-described objections or motion is limited to the contents of the

12  boxes of documents described in this order and in the possession of the California Attorney

13  General's Office.  Plaintiffs are admonished that the Court will not consider arguments or

14  evidence in the above-described objections that were also contained in their prior opposition brief,

15  objections to the tentative ruling, or other filing with this Court.  The prior filings will be

16  considered and will suffice.

17           If Plaintiffs elect to file the above-described objections or a motion under Rule 56(d),

18  Defendants may file an opposition no later than 60 days after the date on which this order issues.

19           To the extent Plaintiffs sought additional relief through their motion, such as the

20  reopening of discovery and the issuance of a protective order, Plaintiffs' Motion (ECF No. 59) is

21  DENIED.

22       **B.      Sanctions**

23           The Court GRANTS IN PART Plaintiffs' motion for sanctions and imposes a monetary

24  sanction of $999.99 to be paid to the Clerk of the Court by defense counsel David W. Hamilton

25  within 14 days of the issuance of this order.  The sanction is personal to counsel, and is not to be

26  borne by his clients.  The check shall be made payable to "Clerk of the Court, U.S. District Court

27  for the Eastern District of California."

28           IT IS SO ORDERED

                                                    12

DATED: December 2, 2013

Troy L. Nunley
United States District Judge